KENNEY COMPANY, INC. v. LOUIS D. HORNE AND OTHERS. COSMOPOLITAN FINANCE COMPANY, APPELLANT.[1]

April 26, 1935.

No. 30,281.

*A. B. Christofferson, Melvin J. Silver,* and *James E. Markham,* for appellant.

*Stacker & Stacker* and *William M. Serbine,* for respondent.

HILTON, JUSTICE.

This is an action to recover an unpaid balance of $1,161.81 on a premium for liability insurance obtained through Kenney Company, Incorporated, plaintiff, and issued by the Hartford Accident & Indemnity Company, upon a number of taxicabs operated by defendants Sharkey, Hawkins, DeMarre, Loberg, and Peterson, under

[1]Reported in 260 N. W. 358.

the name of Radio American Cab Company, an unincorporated association. The association and its individual members were all joined as defendants in the complaint, which also named as defendants Louis D. Horne and Stuart Horne, individually and as copartners, doing business as Horne & Son, and the Cosmopolitan Finance Company, a corporation, of which Louis D. Horne was president and Stuart Horne secretary. Hawkins, DeMarre, and Peterson were not served with summons, and the action was dismissed as to Sharkey before trial. Upon the motion of defendants Horne and at the direction of the court, it was dismissed as to them, leaving Loberg and the Cosmopolitan Finance Company as the sole defendants. The court instructed the jury that Loberg, by his own testimony, was liable individually and as the Radio American Cab Company. He became the owner of all the cabs in November, 1932. After verdict for plaintiff against both defendants, the Cosmopolitan Finance Company appealed from the order denying its motion for judgment notwithstanding the verdict or for a new trial. It will hereinafter be referred to as appellant.

Numerous assignments of error go to the instructions of the court and to its refusal to give requested instructions. We have carefully read the charge, and on the whole it was a fair and accurate presentation of the case. The court instructed the jury that the insurance contract was one for a period of one year and not one from month to month as claimed by appellant. Under the evidence, that instruction was correct. The policy on its face was for one year from noon July 15, 1932. The initial payment was for two months; thereafter monthly in advance. The other assignments all question the sufficiency of the evidence to support the verdict against appellant.

The policy was what is known as a "blanket" policy covering the cabs of the various members of the association as such membership might change, and covering additional cabs added by them. The Radio American Cab Association and its then individual members were named as the insureds. The amount of the coverage was $10,000 and $20,000. The premiums were paid according to the contract until November 18, 1932, after which date no premiums

were paid. The insurance as to 13 cabs was canceled on December 15, 1932, and a credit of $2,366 was allowed therefor. The insurance on the balance of six cabs was canceled on January 25, 1933, and a credit of $764.40 was allowed, which, together with $4,204.92 paid, left a balance of $1,161.81 unpaid, which with interest added is the amount awarded by the jury.

The only question is whether the appellant is liable for the payment of the premium. The appellant corporation was owned and operated by L. D. Horne and his son, Stuart Horne. At the times here important it held chattel mortgages or conditional sales contracts upon the majority of the cabs involved; at the time respondent's agent called upon Stuart Horne for the purpose of selling insurance there was no liability coverage upon the cabs; a city ordinance required such insurance in an amount of not less than $2,500 on each cab. Respondent's agent, one Meehan, testified that all negotiations were had with either Stuart Horne or his father, L. D. Horne; that he did not confer with any of the cab owners; that Stuart Horne gave him the order for the insurance and stated, "We will pay it," referring to the premium, and that he made other statements of the same import; that, relying on that promise, he set out to obtain the coverage desired and finally succeeded in placing it with the Hartford Accident & Indemnity Company (through its agents in Duluth), which would not issue a policy upon taxicabs for a liability less than $10,000 and $20,000. He further testified that he could not place the insurance with any company in St. Paul, and that at the suggestion of the Hornes he agreed to obtain insurance for no other taxicabs in the city, the intention of the Hornes being thereby to "bottle up" the taxicab business in the city of St. Paul.

The payments on the premium were made by check either of appellant or L. D. Horne & Son, respondent in turn paying the insurer's Duluth agents. The policy was delivered to Horne's office, where it was retained until this suit was instituted. Miss Arthur, an employe in the office of respondent, testified that various changes made in the policy were ordered by Stuart Horne; that the cancellation of the insurance was also ordered by him.

The cab owners turned over all of the money earned by the operation of the cabs to Stuart Horne; part of it was applied on the premiums and the remainder credited on their obligations to appellant. Two of the cab owners testified that they did not order any insurance, had never consulted Mr. Meehan in regard thereto, and had not promised him to pay the premium. Stuart Horne testified that the premiums were paid through his office for the convenience of the cab owners and of respondent, as it would be difficult for respondent's agent to collect from the individual members. Meehan stated that he absolutely refused to consider collecting from the cab owners and insisted on premiums being paid by appellant.

Clearly the evidence supports the conclusion of the jury that appellant through its owners and managers ordered the insurance and promised to pay the premiums therefor and that its obligation was an original and primary one. We see no merit to the claim of appellant that because it would not be liable for injuries caused by the cabs it had no insurable interest therein, and therefore it could not be liable for the premiums. Whether or not it had an insurable interest is here immaterial. It undertook to pay the premiums. It was for its benefit that insurance be obtained upon the cabs so that they could be operated and appellant receive their earnings to reduce the indebtedness secured by its chattel mortgages and conditional sales contracts. If the insurance had not been secured, appellant would have been forced to repossess the cabs, as it finally did in June, 1933. Although it collected the earnings of the cabs from the date of its last premium payment, November 18, 1932, to the date of the cancellation of the insurance, it paid no premium during that time.

The obligation of appellant to pay the premiums being a direct and primary one, the statute of frauds has no application. 6 Dunnell, Minn. Dig. (2 ed. & Supp. 1932) § 8865; North Central Pub. Co. v. Speranza, 193 Minn. 120, 258 N. W. 22.

Affirmed.